# OverDrive®, Inc.
## Content Reserve™ Retailer Agreement

1. **INTRODUCTION**

This Agreement is made and entered into this __19__ day of __July__ 2001 by and between OverDrive, Inc., (hereinafter referred to as "OverDrive"), a Delaware corporation, 8555 Sweet Valley Drive, Suite A, Valley Tech Center, Cleveland, Ohio USA 44125 and the following company, person, or entity (hereinafter referred to as "Retailer"):

Retailer's Business Name: ____MEDIABAY.COM, INC.____

Retailer's Primary Contact: __STEVE McCLAUGHLIN__

Address: ____2 RIDGEDALE AVENUE, SUITE 300____

City: __CEDAR KNOLSS__ State: __NJ__ Zip: __07927__ Country: __USA__

Phone: __(973)539-9528__ Fax: __(973)539-1273__ Email Address: __STEVE@MEDIABAY.COM__

Retail Website Address (URL): __WWW.MEDIABAY.COM__

Attached and incorporated in this Agreement are the following Schedules:
 Schedule "A" – Content Reserve Product Costs and Fees
 Schedule "B" – Retail Website Guidelines
 Schedule "C" – Third Party Logo Use Guidelines (C-1 for Microsoft, C-2 for Adobe)
 Schedule "D" – Product License Agreement
Documents not attached but incorporated by reference:
 Schedule "E" – Retailer Credit Terms (to be granted by OverDrive upon review of Credit Application)

2. **DEFINITIONS** As used in this Agreement, the following definitions shall apply:

2.1 "Agreement" shall mean this Agreement between OverDrive and Retailer.

2.2 "Confidential Information" shall mean any information relating to or disclosed in the course of this Agreement, which is or should be reasonably understood to be confidential or proprietary to the disclosing party. "Confidential Information" shall not include information (a) already lawfully known to the receiving party, (b) disclosed in published materials, (c) generally known to the public, or (d) lawfully obtained from any third party.

2.3 "Content Reserve" shall mean the digital content wholesale and distribution service operated by OverDrive, Inc.

2.4 "Content Reserve Products" shall consist of digital products available from Content Reserve for Retailer to resell at its Retail Website.

2.5 "Content Reserve Product Fee" shall be the amounts payable by Retailer to OverDrive for the costs of Content Reserve Products sold or licensed to a Customer in accordance with the terms of this Agreement and Schedule "A".

2.6    "Content Reserve Software" shall mean the system of software, Internet systems, databases, and specifically includes third party Digital Rights Management (DRM) technology and services.

2.7    "Customer(s)" shall mean persons or entities that purchase or license Content Reserve Products from Retailer.

2.8    "Effective Date" shall mean the date upon which both parties to this Agreement have signed the Agreement.

2.9    "OverDrive" shall mean OverDrive, Inc., a Delaware Corporation.

2.10   "Product License Agreement" shall mean a License Agreement between Retailer and a customer relating to the Content Reserve Products and in substantially similar form as contained in Schedule "D".

2.11   "Primary Support" shall mean and include services implemented by Retailer to provide customer service and technical support to Customers for Content Reserve Products as detailed in Schedule "B".

2.12   "Retailer" shall mean the company, person, or entity identified in the Introduction to this Agreement.

2.13   "Retail Website" shall mean the Internet-based business operated by Retailer that sells Content Reserve Products as designated by Retailer in the Introduction to this Agreement.

## 3. GRANT OF USE OF CONTENT RESERVE TO RETAILER

3.1    OverDrive, Inc. has developed Content Reserve as an Internet-based system that permits Retailer to facilitate the resale of digital products through Retailer's Retail Website. Content Reserve manages its service though a system of databases and software it has developed, and by employing third party software for the copyright protection of digital content using Digital Rights Management (DRM) technologies. Retailer seeks to access Content Reserve to utilize its database and marketing data and act as a Reseller of digital content from Content Reserve for sale at Retailer's website ("Retail Website").

3.2    During the term of this Agreement and during any renewals thereof, OverDrive shall grant Retailer access to a Content Reserve Retailer Account. Retailer shall enter true and accurate information relating to its operation of a Retail Website and identify administrative personnel for purposes of Notice and processing invoices from Content Reserve. Retailer shall complete a Content Reserve Retailer Application and Content Reserve Credit Application. In the event of any change of any Retail Website address (URL), email, physical address, account or administrative information or contacts, or ownership of Retailer, Retailer shall promptly notify OverDrive by modifying its Content Reserve Retailer Account to reflect such new or changed information or be providing Content Reserve written notice of such change.

3.3    OverDrive designates Retailer as a non-exclusive Retailer for Content Reserve Products under the terms and conditions of this Agreement. This right is non-transferable and applies solely to the distribution and licensing of the Content Reserve Products in unaltered, object code version form to Customers. Nothing under the terms and conditions of this Agreement, including any of the attachments and Schedules, grant any right to Retailer to the use of, or access to, any Content Reserve Product source files, source content, Content Reserve databases, or any software or technology. This grant does not include any right to otherwise utilize the Content Reserve Products or information relating to it or any right to reproduce the Content Reserve Products or to make and/or sell variations or derivative works of the Content Reserve Products. Sole ownership of copyrights and other intellectual and proprietary rights to the Content Reserve Products shall remain solely with OverDrive and/or its Suppliers. Retailer shall be permitted to use Content Reserve solely for the operation of the designated Retail Website.

3.4     Retailer shall be permitted to download or export Content Reserve marketing information and metadata specifically to populate its Retail Website catalog. Retailer shall not copy, transfer to any third party, share, or otherwise utilize the marketing or metadata, product images, and associated data for any use other than to promote the sale of digital content from Content Reserve at the designated Retail Website. Other than this authorized use, Retailer agrees to protect and maintain the Content Reserve marketing data, metadata, and associated information as confidential information of OverDrive.

3.5     Retailer accepts the grant, in the limited scope provided herein, and agrees to use commercially reasonable efforts to communicate the features, benefits, pricing and availability of the Content Reserve Products to potential Customers in Retailer's ordinary course of business.

3.6     All parties acknowledge that any expenditures or commitments are made at the risk of the party making such expenditures or commitments. Retailer agrees that it shall be responsible for its own expenses and costs under this Agreement and that OverDrive shall have no obligation to reimburse Retailer for any expenses or costs incurred by Retailer in the performance of Retailer's activities hereunder.

3.7     This Agreement is not exclusive and does not impose any obligation on either party with respect to any and all present or prospective competing business relationships or opportunities.

4.     CONTENT RESERVE PRODUCT LICENSE POLICIES

Retailer may grant licenses and rights for the Content Reserve Products to Customers under terms and policies that respect the ownership rights and copyright terms established by Content Reserve and its Suppliers, as may be in effect from time to time. Retailer may comply with this provision by posting on its Retail Website and incorporating into its business practices the Product License Agreement provided by OverDrive (attached hereto as Schedule D) or by preparing its own form of Product License Agreement that complies with the requirements of this Section. In the event Retailer prepares its own form Product License Agreement for the Products, prior to its use with any Customer, it shall submit such form to OverDrive for approval, which approval shall not be unreasonably withheld. OverDrive reserves the right to modify the Product License Agreement. OverDrive reserves the right to specify that Content Reserve Products supplied to Customers by Retailer are subject to restrictions to be stated in the Product License Agreement forms. OverDrive shall provide data as to Suggested Retail Prices for all Content Reserve Products; however, Retailer shall have the right to set all prices charged to Customers.

5.     USE OF COPYRIGHTS AND TRADEMARKS.

OverDrive grants to Retailer a non-exclusive right and license to use its trademarks (OverDrive® and Content Reserve™) for purpose of marketing Content Reserve Products: (1) in its Retail Website, related pages, signs and stationary of Retailer indicating its status as an authorized Retailer, (2) in such marketing materials as OverDrive may choose to supply to Retailer, and (3) in such advertising and other uses as OverDrive may authorize in writing. Retailer may not use the trademarks in connection with any goods or services other than those of OverDrive. Retailer grants to OverDrive a non-exclusive right and license to use Retailer's trademarks as they relate to the Retail Website for use in promotion of Content Reserve.

6.     ANNOUNCEMENTS.

OverDrive and Retailer will issue, at a mutually agreed upon time and in a mutually agreed upon form, a public announcement relating to this Agreement. OverDrive and Retailer will each give the other party the opportunity to review and approve, in advance of its issuance, any public announcement or publicity relating to this Agreement or

any aspect of the parties' relationship hereunder. Other than the announcement of the relationship, the details, terms, and this Agreement are confidential and shall not be disclosed to third parties.

## 7. TITLE TO CONTENT RESERVE SOFTWARE AND CONTENT RESERVE PRODUCTS.

7.1 Subject to the rights granted to Retailer herein, all rights, title and interest in and to Content Reserve, its software, systems, accounts, at all times, shall remain the sole and exclusive property of OverDrive and/or its Suppliers. No right to use, print, copy, display, or alter any component or portion of Content Reserve Software or Products, in whole or in part, is hereby granted, except as expressly provided in this Agreement. No ownership right is granted to any intellectual property relating to the Content Reserve Software. No right is granted to Retailer to use, distribute, rent, lease, lend, supply, or market Content Reserve Software, except as expressly provided in this Agreement, Retailer may not disassemble, extract any source code from, or reverse engineer the Content Reserve Software. No ownership right is granted to Retailer for any Content Reserve Products, which shall solely remain with Content Reserve Suppliers.

## 8. CONTENT RESERVE PRODUCT COSTS, FEES AND PAYMENT

8.1 During the term of this Agreement and renewals, Retailer will pay to OverDrive the listed wholesale cost of digital content or inventory sold by Retailer from Content Reserve and any and all associated fees per Schedule A. Payment shall be made under Retailer's then current terms for credit with Content Reserve. At any time during the term of this Agreement and any renewals thereof, Content Reserve specifically reserves the right to modify Retailer's credit terms. Content Reserve shall invoice Retailer by sending email with a statement, which includes supporting invoice data for all wholesale purchases and any charges due from Retailer.

8.2 Retailer shall pay Content Reserve all amounts due per the credit terms established for Retailer's account. In the event of non-or late payment, Content Reserve may suspend Retailer's Account or otherwise restrict Retailer's ability to distribute additional products until payment has been received. Past due amounts will carry a carrying charge of 1 ½ percent per month. Retailer's invoices and statement will include all information necessary to determine the manner in which the charges are computed. During the Agreement Term, Retailer will keep all usual and proper records and books of account and all usual and proper entries relating to Retailer's sales of Content Reserve products.

8.3 The payment obligations stated in this Section 8 are exclusive of any federal, state, municipal or other governmental taxes, duties, excise taxes or tariffs now or hereafter imposed on the production, storage, sale, transportation, import, export, licensing or use of the Content Reserve Products. Such charges, shall be paid by Retailer or, in lieu of payment of any tax, Retailer shall provide an exemption certificate acceptable to OverDrive and the applicable authority.

## 9. RESELLER'S REPRESENTATIONS

Retailer represents that it has skill and expertise in computer and Retail Website operation and marketing, and that it also has sufficient qualified staff and sufficient financial resources to carry out its obligations under this Agreement including the obligations for providing Primary Support of the Products to the Customer. Retailer represents and warrants to OverDrive that is has the necessary rights to enter into this Agreement

## 10. RESPONSIBILITIES OF RETAILER

10.1 Retailer is solely responsible for all aspects of operation, support, and/or maintenance of Retailer's Content Reserve Account and the Retail Website. Retailer shall keep its Retailer Account information current and alert Content Reserve of any changes in its operation of its Retail Website including but not limited to changes of

ownership. Retailer will use reasonable efforts to ensure that information or data relevant to the operation of Retailer's Retail Website (including without limitation customer personal information and credit card information) will be treated as required by applicable law and reasonable and customary commercial practices. Retailer will comply at its own expense with the provisions of all federal, state and local laws, regulations, and ordinances applicable to the operation of Retailer's Retail Website.

10.2   To insure good business practices for the benefit of customers and suppliers of digital products sold via Retail Websites, Retailer agrees to operate its Retail Website in accordance with the terms and conditions of Attachment "B".

10.3   Retailer will, upon request, promptly report to OverDrive the results of its integration of Content Reserve Software and upgrades and its Primary Support activities. Retailer shall identify and promptly inform OverDrive of any design or programming errors or omissions in the Content Reserve Software of which it becomes aware.

10.4   Retailer assumes sole responsibility for the selection and integration of the Content Reserve Software to achieve the desired results and business purposes of Retailer's Website.

10.5   Retailer represents and agrees that it will not make any representations or create any warranties, expressed or implied, concerning the Content Reserve Software or any Content Reserve Products to prospects or Customers. Retailer will take reasonable steps to insure that it's employees, agents, and others under its direction, abide by the terms and conditions of this provision and this Agreement.

10.6   Retailer shall at all times maintain a good credit rating and sound financial condition. Retailer shall, upon request, promptly submit to OverDrive financial information, as OverDrive shall specify in order to verify Retailer's compliance with this provision. Failure to comply with this provision shall be a material breach of the Agreement that, at OverDrive's discretion, shall be grounds for termination.

10.7   Retailer shall comply with all applicable laws, ordinances, rules and regulations, and Retailer shall obtain any and all permits, licenses, authorization, and/or certificates that may be required in any jurisdiction or any regulatory or administrative agency in connection with the license, sale, use and/or operations of the Content Reserve Software and Content Reserve Products. Regardless of any disclosure made by Retailer to OverDrive of an ultimate destination of the Content Reserve Software or Products, Retailer agrees not to export either directly or indirectly any Software or Product without first obtaining a license to export or re-export from the United States Government, as may be required and to comply with the United States Government export regulations, as applicable.

10.8   Retailer agrees that during the term of this Agreement, Retailer will not, directly or indirectly, develop, have an ownership interest in, consult, train or engage others to develop, any computer program, software product or Internet service that is primarily designed to compete with Content Reserve and Content Reserve Software. Retailer shall be permitted to resell, integrate, upgrade and otherwise represent and market competitive products to Content Reserve and Content Reserve Software, and develop or program external programs to assist or enhance the Software or competitive products.

## 11.   OVERDRIVE'S OBLIGATIONS

11.1   OverDrive shall, under terms of this Agreement and related Schedules, provide Retailer with Content Reserve Product marketing data and other sales data to help Retailer promote the sale of the Content Reserve Products; advise Retailer of the anticipated delivery date of enhancements to the Content Reserve Software or new modules; keep Retailer updated on any new sales aids or promotional pieces; and offer Retailer, where appropriate and at OverDrive's discretion, education and training courses.

11.2    OverDrive will use its reasonable efforts to make the Content Reserve Software perform substantially in accordance with the product description set in the documentation, as it may exist from time to time. However, Retailer acknowledges that inevitably some errors may exist in the Content Reserve Software, and the presence of such errors shall not be a breach of this provision. OverDrive's sole obligation with regard to such errors shall be to use reasonable efforts to correct.

11.3    OverDrive will provide to Retailer Secondary Support for the Content Reserve Software and make reasonable consulting services, technical advice and training available to Retailer. Such services will be provided by phone, modem or at OverDrive's offices. Such services will be provided at such times as are mutually agreed upon by the parties.

## 12. OVERDRIVE'S OPTION TO MODIFY OR DISCONTINUE CONTENT RESERVE SOFTWARE

12.1    OverDrive has the right, at any time, to make such modifications to the Content Reserve Software as it sees fit to the operation, performance, or functionality of Content Reserve.

12.2    OverDrive has the right, at any time, to discontinue distribution of any or all Content Reserve data services, Software or Products, to remove supported Software or Products from Content Reserve's Product list, or to provide new versions, updates, or corrections for any Software or for any version or for any hardware or software platform or operating system. If such a discontinuance of distribution of the Software or of support, maintenance or the provision of new versions, updates, or corrections materially impairs the value of this Agreement to Retailer, Retailer shall have the option to terminate this Agreement.

## 13. WARRANTY

13.1    OverDrive represents and warrants to Retailer that is has the necessary rights to enter into this Agreement and that it has the necessary ownership and intellectual property rights to the Content Reserve Software and Content Reserve Products to grant the licenses herein.

13.2    THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE RIGHTS AND REMEDIES GRANTED TO RETAILER UNDER THIS PARAGRAPH CONSTITUTE THE SOLE AND EXCLUSIVE REMEDY OF RETAILER AND RETAILER'S CUSTOMERS AGAINST OVERDRIVE OR ITS SUPPLIERS FOR BREACH OF WARRANTY, EXPRESS OR IMPLIED, OR FOR ANY ERRORS OR DEFECTS IN THE SOFTWARE. IN NO EVENT, UNLESS DUE TO WILFULL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD, SHALL OVERDRIVE BE LIABLE TO RETAILER OR RETAILER'S CUSTOMERS FOR ANY DAMAGES ARISING FROM OR RELATED TO FAILURE OR INTERRUPTION OF THE CONTENT RESERVE SOFTWARE, OR FOR INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, OR FOR LOSS OF PROFIT OR OPPORTUNITY, LOSS OF USE OR OTHER FINANCIAL LOSS ARISING OUT OF OR IN CONNECTION WITH THE LICENSE, TRANSFER OR USE OF THE CONTENT RESERVE SOFTWARE.

## 14. INDEMNIFICATION

Either party (the "indemnifying party") will, at its own expense, defend any claim or action brought against the other party (the "indemnified party"), and its Affiliates, for any claim that, as alleged, would represent a breach of any warranty or representation made by the indemnifying party hereunder. The indemnifying party will indemnify and hold harmless the indemnified party from and against any damages finally awarded against the indemnified party or agreed pursuant to a settlement in accordance with the requirements of this, and any costs and fees

(including without limitation, attorneys' fees) reasonably incurred by the indemnified party that are attributable to such a claim. The indemnifying party will not be responsible for any settlement made by the indemnified party without the indemnifying party's written permission, which permission will not be unreasonably withheld. The indemnified party will (i) provide the indemnifying party reasonably prompt Notice of any such claim or action and permit the indemnifying party to answer and defend such claim or action; and (ii) provide the indemnifying party with such information, assistance and authority, at the indemnified party's expense, as may be necessary or appropriate to enable the indemnifying party to defend such claim or action. The indemnified party has the right, at its expense, to employ separate counsel and participate in the defense of any claim or action that the indemnifying party is defending.

With respect to this Section, OverDrive shall have no obligation to Retailer to defend or satisfy any claims made against Retailer that arise from use, marketing, licensing, or disposition of the Content Reserve Software or Content Reserve Products by Retailer other than as permitted by this Agreement. OverDrive shall not be responsible to indemnify Retailers for claims arising from the use or license of third party software including DRM where OverDrive is not afforded such corresponding indemnification from said third party vendor. In the event a claim arises from use of non-OverDrive technology, and OverDrive is not indemnified by the vendor of such product or technology, then OverDrive is not liable to extend indemnification under this section to Retailer for any such claims.

## 15. TERM AND TERMINATION

15.1   This Agreement shall take effect on the Effective Date. Unless sooner terminated in accordance with the relevant provisions of this Agreement, the term of this Agreement shall be for one (1) year and shall be automatically renewed successively for an additional term of one (1) year unless either party, in its sole discretion, gives notice of termination no less than ninety (90) days prior to the expiration of then current term.

15.2   In the event that Retailer fails to maintain a satisfactory credit rating or financial condition or if OverDrive concludes that for any reason Retailer is or will become unable to discharge its obligations hereunder, OverDrive may terminate this Agreement upon written notice.

15.3   In the event of a filing by or against either party of a petition for relief under the United States Bankruptcy Code or any similar petition under the insolvency laws of any jurisdiction, where such filing is not dismissed within thirty (30) days after the date of the filing, or should Retailer discontinue the business operations relevant to this Agreement, then the other party may immediately terminate this Agreement upon written notice.

15.4   In addition to provisions authorizing termination hereunder, either party shall have the right to terminate this Agreement as a result of a material breach of the Agreement by the other party that is not cured within thirty (30) days after written notice of such breach.

15.5   Upon termination of this Agreement, and except as otherwise provided in this Agreement, the license granted to Retailer by this Agreement shall be terminated immediately; Retailer shall make no further use of all or any part of the Content Reserve Software, data, or any confidential information received from OverDrive.

15.6   In the event of termination Retailer shall report to OverDrive as to the then current status of its unfilled sales and orders with all Customers and as to its obligations to Customers. Retailer shall cease any public statement or representation that it is an authorized Retailer or that it is in any way involved with OverDrive, and shall immediately cease use of any trademark, or trade name of OverDrive or Content Reserve, except as may otherwise be authorized in writing by OverDrive.

15.7 The provisions of this Agreement concerning confidential information and indemnification shall survive the termination of this Agreement, and termination shall not relieve either party of the obligation to pay any amount due to the other. It is understood and agreed that no termination of this Agreement, whatever the cause thereof, shall in any way terminate, restrict, limit, or affect in any way the right of any authorized customer to utilize the Content Reserve Products in accordance with the terms of a valid sale or license.

15.8 Notwithstanding anything to the contrary contained in this Agreement, either party may terminate this Agreement at any time for any reason with thirty (30) days written notice to the other party.

## 16. GENERAL PROVISIONS

16.1 Independent Contractor. Retailer is an independent contractor under this Agreement and nothing in this Agreement authorizes Retailer to act as a legal representative or agent of OverDrive or Content Reserve for any purpose. It is expressly understood that this Agreement does not establish a franchise relationship, partnership, principal-agent relationship, or joint venture, and Retailer shall refer to itself as the Retailer of Content Reserve Products. Retailer shall not have the power to bind OverDrive with respect to any obligation to any third party, and will make this fact clear to all prospects and Customers. Retailer is solely responsible for its employees, including terms of employment, wages, hours, required insurance, and daily direction and control.

16.2 Confidential Information. Retailer acknowledges that it will receive confidential information from OverDrive relating to technical and marketing issues about the Content Reserve Software and the business affairs of OverDrive. This Agreement and all Schedules are Confidential. Retailer agrees that all confidential information of OverDrive shall be held in strict confidence and shall not be disclosed or used without express written consent of OverDrive. Each party acknowledges that it will receive confidential information from the other party relating to technical, marketing and business affairs of the other party. Each party agrees that all confidential information of the other party shall be held in strict confidence and shall not be disclosed or used without express written consent of the other party.

16.3 No Waiver. The failure of either party to exercise any right or the waiver by either party of any breach shall not prevent a subsequent exercise of such right or be deemed a waiver of any subsequent breach of the same or of any other term of the Agreement.

16.4 Notice. All notices, requests, demands or other communications required to be given pursuant to the Agreement shall be in writing and shall be deemed to have been given, if sent by U.S. mail, registered or certified mail, return receipt requested, postage prepaid, addressed to the parties at their place of business or to such other addresses as the parties direct in writing. Notice to OverDrive shall be addressed to OverDrive, Inc. at the address identified in this Agreement. Notice to Retailer shall be addressed to the company, person or entity identified as Retailer in the Introduction to this Agreement. For purposes of invoicing Retailer, and notices pertaining to the use and operation of Retailer's Content Reserve Account, OverDrive shall be permitted to use email notice to Retailer's Primary Contact using the email address provided by Retailer in this Agreement.

16.5 Assignment. Either Retailer or OverDrive may assign this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, legal representatives, successors and permitted assigns.

16.7 Taxes. Retailer shall pay, in addition to the other amount payable under this Agreement, all local, state and federal excise, sales, use, privilege, personal property, gross receipts and similar taxes levied or imposed by reason of the transactions under this Agreement. Retailer shall, upon demand, pay to OverDrive an amount equal to any such tax actually paid or required to be collected or paid by OverDrive.

16.8    Limitations of Liability. In the event of failure of either party to fulfill any of its obligations hereunder, the initial remedy of the other party under this Agreement shall be to request performance of such obligation. If such performance is not rendered, the other party may terminate the Agreement and, where appropriate, bring an action for any moneys due and payable hereunder for services rendered. However, either party shall be entitled to enforce its rights regarding patents, copyrights, trademarks, or trade names, by any appropriate action, including actions for damages and equitable relief.

16.9    Injunctive Relief. The parties to this Agreement recognize that a remedy at law for a breach of the provisions of this Agreement relating to confidential information, use of OverDrive's trademark, copyright, and other intellectual property rights, and/or Non-competition, will not be adequate for OverDrive's protection, and accordingly OverDrive shall have the right to obtain, in addition to any other relief and remedies available to it, injunctive relief to enforce the provisions of this Agreement.

16.10   Severability. In the event that a court of competent jurisdiction determines that any portion of the Agreement is unenforceable, void, invalid or inoperative, the remaining provisions of this Agreement shall not be affected and shall continue in effect as though such invalid provisions were deleted.

16.11   Attorney Fees. In the event a non-defaulting party requires the services of an attorney to enforce any provision of this Agreement, said non-defaulting party shall be entitled to attorney's fees, together with expenses and costs incurred in connection with such enforcement.

16.12   Governing Law. This Agreement shall be governed and interpreted in accordance with the substantive law of the State of Ohio, United States of America.

16.13   Exclusive Jurisdiction and Venue. Any legal action brought concerning this Agreement or any dispute hereunder, including but not limited to an action to enforce or challenge an arbitration award, shall be brought only in the courts of the State of Ohio, USA, in the County of Cuyahoga, or in the federal courts located in such state (and county). Both parties submit to venue and jurisdiction in these courts. In the event that an action or claim arises outside of the exclusive jurisdiction specified herein which names OverDrive as a party, Retailer agrees to initiate, consent to and/or cooperate with any and all efforts to remove the matter to the exclusive jurisdiction named herein, or otherwise take any and all reasonable actions to achieve OverDrive's objectives of this provision.

16.14   Entire Agreement. This Agreement constitutes the entire Agreement and understanding of the parties and supersedes all prior and contemporaneous Agreements, understandings, negotiations and proposals, oral or written. Section headings are provided for convenience purposes only and do not provide any modifications or substantive meaning to the terms and conditions of this Agreement. This Agreement may be amended or modified only by a subsequent Agreement in writing signed by each of the parties and may not be modified by course of conduct.

16.15   Binding. This Agreement shall be binding and inure to the benefit of the parties hereto and their respective successors. In the event OverDrive enters into an agreement to sell substantially all the assets of OverDrive, this agreement shall be binding upon the purchaser.

Copyright © OverDrive, Inc.
July 2001
Version 071301

(Confidential)

9

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the dates indicated below.

| | |
|---|---|
| **OVERDRIVE, INC. dba Content Reserve** ("OverDrive") <br> 8555 Sweet Valley Drive, Suite A <br> Cleveland, Ohio 44125 USA | MEDIABTY.COM, INC. ("Retailer") <br> 2 Ridgedale Ave. <br> Cedar Knolls, NJ 07927 |
| By (signature) _Loree Potash_ | By (signature) _[signature]_ |
| Name (Print) _Loree Potash_ | Name (Print) _Michael Hennick_ |
| Title _Corp Secy_ | Title _CEO_ |
| Date _7/23/01_ | Date _7/19/01_ |

Copyright © OverDrive, Inc.
July 2001
Version 071301

(Confidential)

10

Attachment "A"
## Content Reserve Product Costs and Associated Fees

**Wholesale Costs of Products.**

Content Reserve is a wholesale distributor that aggregates digital product inventory from Publishers or other suppliers ("Content Reserve Products" or "Products"). The Content Reserve database lists the wholesale cost of products to Retailer. Included in the wholesale costs to Retailer are third party technology fees to DRM providers such as Microsoft Corporation and Adobe Systems. For every product listed in Content Reserve databases, Retailer shall also be provided Publisher's Suggested Retail Price (SRP). Retailer is solely responsible for establishing its sale price of Products to Customers.

Content Reserve Suppliers (publishers) may modify their Suggested Retail Price that will modify the wholesale costs of products to Retailer. In such event, the change in price and costs to Retailer will be posted in the Content Reserve database. In the event of a price increase for inventory in the system, Content Reserve will send a notice to Retailer of the price increase.

Retailer is responsible for the wholesale costs of product it sells from Content Reserve based on the date the Customer downloads or receives the product. It is conceivable that a Retailer may sell a product to a Customer based upon a lower wholesale cost, and the Customer delays downloading the Product for a period of time to until at a later date when the Wholesale Product Cost has increased. In this event Retailer will be invoiced the Wholesale Costs of the Product based upon the date and time Customer receives the Product (In this example, the higher wholesale cost.) Retailer is not charged for repeat downloads of purchased Products from Customers. Once a Customer has purchased a Product, the same Customer may repeatedly download the purchased Product without charge to the Retailer for the additional downloads.

**Additional Charges for Credit Services.**

Based upon the credit terms in effect with Retailer, Retailer may be subject to one or more additional fees. These may include late charges for delinquent or past due amounts, deposits for new accounts, or transaction processing fees for credit card costs to Content Reserve if Retailer is on a credit card payment plan for its purchases. In each case where an additional fee is imposed, Retailer will receive a Credit Term Sheet from Content Reserve that itemizes such fees.

**Reporting of Product Transactions.**

Content Reserve is required to provide to its publishers, suppliers and technology vendors reports itemizing product transactions. Retailer acknowledges that Product sales, titles sold, and other transaction information will be reported to the suppliers providing Product or DRM technology associated with such Product.

**Risks for Credit Card or Website Fraud.**

Content Reserve is obligated to pay Publishers and suppliers of Content based on deliveries of Product. Retailers are charged for each Product delivered to a Customer as a result of an order placed through their Retail Website. Retailer is responsible for the wholesale cost of the Product even in the event that Retailer suffers loss from the Customer presenting a fraudulent credit card, or other losses or circumvent of Retailer's system to collect payment for the sale of the Product. Retailer is responsible to insure that it safeguards against website fraud as Retailer will be charged for all Products delivered as a result of orders processed from its Retail Website, even in the event of breaches of security, software failure, negligence, or other events that cause Retailer to dispense Products from Content Reserve.

Attachment "B"

## Retail Website Guidelines

### Customer Support Resources

Retailer will provide customer support on not less than the following basis

| Topic | Support Resource |
|---|---|
| Helpdesk | 24x7 customer support via e-mail and/or phone in support of all customer inquiries, issues, and problems. |
| Privacy Policy Statement | Publish a statement providing customers with privacy policies relating to the use of customer information, including personal information (name and address), credit card number and usage data. |
| Safe Shopping Guarantee | Publish a statement providing customers with a "safe shopping" guarantee relating to the security of all transactions and personal information (name, and address) and credit card number. |
| Frequently Asked Questions | Provide customers with answers to frequently asked questions. |

### Data Security

Retailer will take reasonable steps to prevent unwarranted intrusion into data managed or maintained by or on behalf of Retailer and acquired in the course of Retailer's operation of Retailer's Retail Website. Retailer will adhere to privacy requirements stated for TrustE members and will maintain membership in TrustE organization (http://www.truste.org/).

### Real time credit-card authorization

Retailer will use reasonable efforts to provide real time credit-card authorization for Content Reserve Product transactions.

Attachment "C-1"
For Microsoft® Reader as required by Microsoft® Corporation

## MICROSOFT LOGO GUIDELINES

- Retailer may use the Reader Logo solely on Retailer's Reader eBookstore home page and in related advertising materials, and in no other manner.
- Retailer's name, logo, or trademark must appear on any materials where the Reader Logo is used and must be larger and more prominent than the Reader Logo.
- The Reader Logo may not be used in any manner that expresses or might imply Microsoft's affiliation, sponsorship, endorsement, certification, or approval, other than as contemplated by this Agreement.
- Retailer shall not use the Reader Logo in a manner that might create potential confusion as to source or sponsorship of the Retailer's Reader eBookstore or ownership of the Reader Logo.
- The Logo may not be included in any non-Microsoft trade name, business name, domain name, product or service name, logo, trade dress, design, slogan, or other trademark.
- Retailer may use the Reader Logo only as provided by Microsoft electronically or in hard copy form. Except for size subject to the restrictions herein, the Reader Logo may not be altered in any manner, including proportions, colors, elements, etc., or animated, morphed, or otherwise distorted in perspective or dimensional appearance.
- The Reader Logo may not be combined with any other symbols, including words, logos, icons, graphics, photos, slogans, numbers, or other design elements.
- The Reader Logo (including but not limited to Microsoft's logos, logotypes, trade dress, and other elements of product packaging and web sites) may not be imitated in any Retailer materials.
- The Reader Logo may not be used as a design feature in any materials.
- The Reader Logo must stand-alone. A minimum amount of empty space must surround the Reader Logo separating it from any other object, such as type, photography, borders, edges, and so on. The required area of empty space around the Reader Logo must be 1/2$x$, where $x$ equals the height of the Reader Logo.
- Each use of the Reader Logo must include the notice: "Microsoft" is a registered trademark of Microsoft Corporation in the United States and/or other countries". When using the
- Reader Logo online, Retailer may display such notice on its copyright page.

Marketing.

Throughout the Agreement Term, in all marketing and publicity materials or collateral relating to Retailer's Reader eBookstore, Retailer will refer to the availability of Reader eBooks and Reader Compatible Content by means of Retailer's Reader eBookstore no less prominently than references made by Retailer with respect to the availability of Content in other formats which are or may be offered by Retailer.

With respect to the Reader Client, Retailer shall not reverse engineer, decompile, or disassemble the Reader Client; Retailer shall not authorize further redistribution of the Reader Client by customers of Retailer's Reader eBookstore or others authorized to distribute the Reader Client pursuant to this Schedule, Retailer shall maintain and not alter or remove any Microsoft copyright, trademark or other intellectual property notices contained in the Reader Client, including the end user license agreement included in the set up and installation processes for the Reader Client.

**Reader Logo.**

Microsoft grants Retailer a non-exclusive, non-transferable, personal, limited, worldwide, royalty-free license to use the Reader Logo as may be provided by Microsoft for use under this Agreement, solely in connection with Retailer's Reader eBookstore and in accordance with the terms of this Agreement, including the Logo Guidelines in this Schedule and as such guidelines may be amended from time to time. All rights not expressly granted herein are reserved to Microsoft. This Agreement does not grant Retailer any right, title, interest, or license in or to any other names, logos, trade dress, designs, or trademarks of Microsoft. Unless otherwise provided herein, Retailer's use of the Reader Logo will be subject to advance approval by Microsoft, or OverDrive, Inc. as its agent in each instance.

Retailer agrees to maintain the quality and performance of the Retailer's Reader eBookstore at a level that meets or exceeds standards of quality and performance generally accepted in the industry for the same category of services. Retailer will fully correct and remedy any deficiencies in its use of the Reader Logo and the quality of Retailer's Reader eBookstore operated in conjunction with the Reader Logo, promptly upon receipt of Notice from Microsoft.

Retailer's license to use the Reader Logo in connection with Retailer's Reader eBookstore shall not extend to the merchandising or sale of related or promotional products under the Reader Logo.

Attachment "C-2"
For Adobe® Content Server and Acrobat® eBook Reader
as required by Adobe® Systems, Inc.

# GUIDELINES FOR THIRD PARTIES WHO USE ADOBE TRADEMARKS

1. **Introduction.** The following guidelines are designed to ensure proper legal usage of Adobe trademarks and to prevent consumer confusion that can result from improper or illegal usage. These guidelines will help you identify the correct form for Adobe trademarks, the proper method of marking using the symbols ® and ™, and the appropriate attribution statement to accompany use of Adobe trademarks by third parties. The guidelines also provide information related to commonly asked questions about the proper use of Adobe trademarks. For convenience, these guidelines refer only to trademarks, but the rules also apply to service marks as well.

2. **Identifying the Proper Trademark Form.**

a) The database of Adobe trademarks shows the proper content, spelling, and capitalization of Adobe's current trademarks. Note that the proper form for product names normally includes "Adobe" ; for example, "Adobe Photoshop "is preferred over "Photoshop."

b) Never vary the spelling, add or delete hyphens (even for normal hyphenation at the end of a line of text), make one word two, or use a possessive or plural form of the trademark. Adobe trademarks must always be used as adjectives followed by a generic term (such as "software"), and never as nouns or verbs. For example:
    CORRECT: The image was modified using Adobe Photoshop ® software.
    INCORRECT: The image was Photoshopped.
    CORRECT: You'll appreciate the PostScript ® interpreter's unique ability to provide flexibility.
    INCORRECT: You'll appreciate PostScript's ® unique ability to provide flexibility.

c) Marking With ® or ™ when using an Adobe trademark on any materials that will be distributed or presented to the public in the United States or in the United States and other countries, use the registered trademark symbol ® on the most prominent (or if none is prominent, the first) appearance of a trademark registered with the U.S. Patent and Trademark Office. (If the materials will be distributed only in a certain country or region outside of the United States, please contact Adobe legal for the appropriate marking information). For any Adobe trademark that is not registered, the ™ symbol should be used in place of the registered trademark symbol (®). Once marked, it is not normally necessary to mark subsequent appearances of the trademark in the piece.

d) Every appearance of Adobe logos and product names in stylized form should always appear with the appropriate ® or ™ symbol, and may be used only under license with Adobe—unauthorized use is strictly prohibited.

3. **Attribution Statements.** An attribution statement (which may appear in small, but still legible, print) must accompany any Adobe trademark when used in commerce. The statement should read: [List of Adobe marks used, beginning with "Adobe" and "the Adobe logo," if used, followed by any other marks in alphabetical order] are either registered trademarks or trademarks of Adobe Systems Incorporated in the United States and/or other countries. For example: Adobe, the Adobe logo, Acrobat, the Acrobat logo, Adobe Premiere, After Effects, FrameMaker, PageMaker, Photoshop and PostScript are either registered trademarks or trademarks of Adobe Systems Incorporated in the United States and/or other countries. If it is not feasible to include the attribution statement (and if it is not required by any contract you may have with Adobe), it may be acceptable to use a general-purpose attribution statement in a form such as this: All other trademarks are the property of their respective owners.

Attachment "C-2" (cont.)

b) PostScript. PostScript is an Adobe trademark used with the Adobe PostScript interpreter, the Adobe PostScript page-description language, and other Adobe products. Adobe does not permit the use of the PostScript trademark for software, hardware, or other related products from companies other than Adobe, unless the company has obtained a license from Adobe to do so. Always use the PostScript trademark as an adjective, not a noun. Companies who are not Adobe licensees but who claim to have technology that is compatible with Adobe PostScript products may claim, if true, that their products are "compatible with PostScript Level X" as long as nothing in the circumstances would create consumer confusion. Such companies may not make use of terms such as "PostScript printer" or "PostScript RIP" in connection with their "clone" products.

    CORRECT: Adobe has developed industry-standard PostScript® language solutions
    INCORRECT: Adobe has developed industry-standard PostScript
    CORRECT: The first "real-time" RIP for PostScript® language compatibility
    INCORRECT: The first "real-time" RIP for PostScript®

c) Special Program Marks. Adobe has developed a number of trademarks (including word marks and logos) used in support of certain programs such as the Adobe Authorized Service Provider Program, the Adobe Certified Training Provider Program, and the Adobe Charged program. If you are not an approved licensed participant in such programs and in good standing, you may not use the trademarks in word or logo form to claim or imply participation in the program.

Attachment "C-2" (cont.)

# ADDITIONAL TERMS AND CONDITIONS FOR USERS OF ADOBE® CONTENT SERVER AND ACROBAT® EBOOK READER AS REQUIRED BY ADOBE® SYSTEMS, INC.

**1. Third Party Beneficiary.** Retailer is hereby notified that Adobe Systems Incorporated, a Delaware corporation located at 345 Park Avenue, San Jose, CA 95110-2704 USA ("Adobe") is the supplier of Content Server software to Licensee. Adobe has licensed to Licensee the right to secure and distribute electronic content and conduct related transactions on behalf of third parties for whom Licensee has agreed in writing to supply such services, subject to minimum conditions imposed on Licensee under the terms of the Adobe Content Server License Agreement ("Adobe Agreement"). Such conditions are made expressly for the benefit of Adobe, and as a third-party beneficiary to any agreement between OverDrive Inc. and Retailer, Adobe shall have the right to enforce any or all of such conditions, including the right to terminate this agreement upon giving Licensee notice of its intention to terminate, if Licensee shall fail to fulfill its obligations set forth in the Adobe Agreement. Retailer expressly agrees that Adobe is a third-party beneficiary to this agreement to the extent that this agreement contains provisions that relate to the conditions imposed on Licensee under the Adobe Agreement.

**2. Retailer Indemnity.** Retailer agrees to defend, indemnify and hold Adobe Systems and Adobe Benelux harmless from any claims, suits, proceedings, losses, liabilities, damages, costs and expenses (including without limitation reasonable attorneys' fees) made against or incurred by Adobe Systems and Adobe Benelux arising out of claims, suits or proceedings based on allegations alleging that (a) products, content (including without limitation ebooks and web sites), services or software provided by Retailer, (i) infringe upon any third party's intellectual property rights; (ii) contain any materially false, misleading or inaccurate material; or (iii) when used in the manner in which it is intended, will not violate any material law, statute, ordinance or regulation (including without limitation the laws and regulations governing export control, unfair competition, anti-discrimination or false advertising) or (b) Retailers have misused the identity or personal information of someone using its products, services or visiting its web sites ("User") or otherwise violated such User's privacy rights (including, without limitation, claims based on statute or Licensee's and/or products, services or visiting its web sites ("User") or otherwise violated such User's privacy rights (including, without limitation, claims based on statute or Licensee's and/or its Retailers applicable privacy policy); provided, in each such instance involving a third party claim, Adobe Systems and/or Adobe Benelux (1) promptly notifies Licensee in writing of such claim, suit or proceeding (2) gives Licensee the right to control and the direct investigation, preparation, defense and settlement of any claim, suit or proceeding, provided that Adobe Systems and/or Adobe Benelux will have the right to participate with counsel of their choice in such defense or settlement; and (3) gives assistance and full cooperation for the defense of same. Retailer shall pay any resulting damages, costs and expenses finally awarded to a third party, but Retailer is not liable for such amounts, or for settlements incurred by Adobe Systems and Adobe Benelux, without Retailer's written authorization.

**3. Warranty and Disclaimer.** Adobe disclaims any and all warranties of any kind with respect to the Content Server, express or implied, and any implied warranty or condition of fitness for a particular purpose, merchantability, merchantable quality or non-infringement. No person is authorized to make any other warranty or representation concerning the performance of Content Server other than as provided in this paragraph. Retailer shall make no other warranty, express or implied, on behalf of Adobe Systems or Adobe Benelux.

**4. Limitation of Liability.** Under no circumstances will Adobe be liable to Retailer under any contract, strict liability, negligence or other legal or equitable theory, for any incidental or consequential damages or lost profits in connection with the Content Server.

Attachment "C-2" (cont.)

5. **Retailer Representations and Warranties.** Retailer represents and warrants that:
   a) any Transaction conducted by Retailer does not and will not infringe or violate the Intellectual Property Rights of any third party;
   b) the Retailer's Electronic Documents do not and will not (i) contain any false, defamatory, offensive, pornographic, or obscene material, (ii) contain any viruses, trap doors, hidden sequences, hot keys, or time bombs, or (iii) violate any applicable law or regulation; (c) Retailer has sufficient rights to conduct Transaction, including any necessary consent, authorization, release, clearance or license of any third party ("Release"), including any Release related to any rights of privacy or publicity, as may be necessary for Retailer to conduct Transactions.

6. **Proprietary Rights.** Retailer acknowledges that Content Server is proprietary to Adobe (including source code, structure and organization) and that Adobe retains exclusive ownership of all right, title and interest in the Content Server, Documentation, and Trademarks. Retailer will take all reasonable measures to protect Adobe's proprietary rights in the Content Server and Documentation. Retailer is not granted any rights to patents, copyrights, trade secrets, trade names, trademarks (whether registered or unregistered), or any other rights, franchises or licenses with respect to the Content Server and/or Documentation.

7. **Government Regulations.** Retailer hereby acknowledges that Content Server contains encryption capabilities and the export of which is prohibited from the United States or Canada absent a license or other approval from the U.S. Department of Commerce. Retailer agrees that it will not export or re-export the Content Server or any portion thereof without the appropriate United States and foreign licenses and approvals and otherwise comply with all applicable U.S. export control regulations. Adobe agrees to comply with all applicable laws including, if appropriate, the provisions of Executive Order 11246, as amended, Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974 (38 USC 4212), and Section 503 of the Rehabilitation Act of 1973, as amended, and the regulations at 41 CFR Parts 60-1 through 60-60, 60-250, and 60-741. The affirmative action clause and regulations contained in the above shall be incorporated by reference in this Agreement